IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HERMELINDO MORA-MENDOZA,  3:13-cv-01747-HU

           Petitioner,  OPINION AND ORDER

  v.

ELIZABETH GODFREY, Assistant
Field Office Director,
Portland Field Office, U.S.
Immigrations and Customs
Enforcement; NATHALIE ASHER,
ICE Seattle Field Office
Director; JOHN SANDWEG, Acting
Director of ICE; and RAND
BEERS, Acting Secretary of the
Department of Homeland
Security,

           Respondents.

MICHAEL T. PURCELL
16771 Boones Ferry Rd., Suite 100
Lake Oswego, Oregon 97035

    Attorney for Petitioner

S. AMANDA MARSHALL
United States Attorney
JAMES E. COX, JR.
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondents

1 - OPINION AND ORDER

BROWN, Judge

Petitioner, currently in the custody of U.S. Immigration and Customs Enforcement (ICE), brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241. Petitioner argues he is in ICE custody in violation of 8 U.S.C. § 1226(c) because he is currently detained without the opportunity for release on bond. For the reasons set forth below, the petition is DENIED, and this proceeding DISMISSED, with prejudice.

## BACKGROUND

Petitioner is a 38-year old citizen of Mexico who came to the United States without inspection in 1989. On September 11, 2007, Petitioner pled guilty to felony Possession of Cocaine in Oregon state court. Admin. Rec. (#10-3) at 70-79. Petitioner was sentenced to 18 months of probation. Admin. Rec. (#10-3) at 77.

Petitioner first came to the attention of ICE on March 14, 2009 after immigration officials discovered him lodged in the Marion County Jail in Salem, Oregon on misdemeanor charges of Driving Under the Influence of Intoxicants. Admin. Rec. (#10-4) at 8. Immigration officials placed a detainer on Petitioner, who was subsequently released to ICE custody on March 17, 2009. Id. On March 31, an immigration judge (IJ) granted Petitioner release from custody, and set bond at $5,000. Admin. Rec. (#10-2) at 50. Petitioner's family posted bond the following day and Petitioner

2 - OPINION AND ORDER

was released from custody pending further immigration proceedings. Admin. Rec. (#10-4) at 64-73.

ICE issued Petitioner a Notice to Appear for August 26, 2009. Admin. Rec. (#10-2) at 30-31. On August 20, 2009, however, six days before the date on Petitioner's Notice to Appear, an IJ signed an order stating Petitioner failed to appear at his hearing and ordered Petitioner removed to Mexico.[1] Admin. Rec. (#10-2) at 87. Accordingly, on September 1, 2009, ICE issued a Warrant of Removal/Deportation for Petitioner. Admin. Rec. (#10-2) at 89. On September 11, 2009, Petitioner voluntarily departed the United States by walking across the border at Tijuana, Mexico. Admin. Rec. (#10-4) at 34.[2]

Petitioner subsequently returned to the United States. ICE officials discovered Petitioner on May 30, 2013, when he was arrested on misdemeanor charges of Giving False Information to a Police Officer and Using Another's License. Admin. Rec. (#10-3) at 2. Petitioner pled guilty to those charges on August 27, 2013, but apparently did not go into ICE custody at that time. Admin. Rec. (#10-3) at 80-87. On September 20, 2013, Petitioner was charged with misdemeanor Driving While Suspended. Admin. Rec. (#10-3) at

---

[1] It is unclear why Petitioner's removal hearing was held six days before the date on the Notice to Appear.

[2] It is also unclear why Petitioner was permitted to voluntarily depart.

3 - OPINION AND ORDER

3. Petitioner was delivered into ICE custody on September 30, 2013. Admin. Rec. (#10-3) at 2.

Although Petitioner was initially denied an opportunity for a bond hearing because he was the subject of an outstanding order of removal from his prior immigration proceedings, on October 29, 2013, the IJ reopened Petitioner's prior removal proceedings. ICE now maintains Petitioner is not entitled to an opportunity for release on bond because Petitioner's 2007 conviction for Possession of Cocaine subjects him to mandatory detention under 8 U.S.C. § 1226(c)(1). Petitioner filed the instant petition seeking an order instructing ICE to hold a bond hearing or release him, arguing that ICE cannot rely on 8 U.S.C. § 1226(c)(1) as grounds for mandatory detention.

## **DISCUSSION**

As relevant to this case, the Immigration and Nationality Act (INA) provides that ICE "shall take into custody any alien who" is deportable by reason of having committed a qualifying offense "*when the alien is released.*" 8 U.S.C. § 1226(c)(1) (emphasis added). The parties agree that Petitioner's 2007 cocaine conviction is a qualifying offense. Thus, the only question is whether an alien who is not taken into custody at the time of his release from state custody may nonetheless be subject to mandatory detention under Section 1226(c)(1).

4 - OPINION AND ORDER

The Board of Immigration Appeals (BIA) interpreted Section 1226(c) to provide that an alien who has committed a qualifying crime is subject to mandatory detention regardless of whether ICE took the alien into custody "immediately upon his release from state custody." In re Rojas, 23 I. & N. Dec. 117, 127 (BIA 2001). Thus, the BIA interpreted Section 1226(c)(1), including the "when . . . released" language, to not limit the timeframe during which ICE may take an alien into custody and detain the alien pursuant to Section 1226(c)(1).

"The BIA's construction of ambiguous statutory terms in the INA through case-by-case adjudication is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc." Henriquez-Rivas v. Holder, 707 F.3d 1081, 1087 (9th Cir. 2013) (citing Chevron, 467 U.S. 837, 844 (1984)). The Chevron analysis requires the Court to examine the agency's interpretation of the statute in two sequential steps. First, the Court considers whether the statute is ambiguous as to the precise question at issue. Second, if the statute is ambiguous, the Court considers whether the agency's interpretation is reasonable. See Chevron, 467 U.S. at 842-43.

Since In re Rojas, courts have been split on whether mandatory detention under Section 1226(c)(1) requires ICE to take the alien into custody immediately upon the alien's release from criminal custody. A majority of district courts to consider the issue,

5 - OPINION AND ORDER

including this Court, have held the "when . . . released" provision unambiguously restricts ICE's authority to detain an alien pursuant to Section 1226(c) to those situations in which they immediately take custody of the alien upon release from criminal custody. See, e.g., Boonkue v. Ridge, No. 3:04-cv-00566-PA, 2004 WL 1146525 (D.Or. May 7, 2004); Vicencio v. Shanahan, Civ. No. 12-7560 (JAP) (D.N.J. Feb. 26, 2013); Castillo v. ICE Field Office Director, 907 F. Supp. 2d 1235 (W.D. Wa. 2012). On the other hand, a growing number of courts, recently including two courts of appeals, have reached the opposite conclusion and found that an alien may be subject to mandatory detention under Section 1226(c)(1) even if ICE does not immediately take the alien into custody upon release from criminal custody. See, e.g., Sylvain v. Attorney Gen. of the United States, 714 F.3d 150 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375 (4th Cir. 2012); Johnson v. Orsino, 942 F. Supp. 2d 396 (S.D.N.Y. 2013).

Although I appreciate the difficulty of this question, under Chevron I defer to the BIA's interpretation of Section 1226(c)(1). I alternatively find that even if the "when . . . released" provision requires ICE to immediately take custody of an alien upon release from criminal custody, ICE's failure to do so does not deprive it of the authority to subject the alien to mandatory detention under Section 1226(c). Accordingly, I conclude the delay between Petitioner's release from criminal custody on his cocaine

6 - OPINION AND ORDER

possession charges and ICE taking Petitioner into custody does not deprive ICE of the authority to detain Petitioner under Section 1226(c)(1).

I.   *Chevron* Analysis

   A.   Step One

As indicated above, at Step One of the Chevron analysis, the Court considers whether the statute is ambiguous as to the precise question at issue. See Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. The Court determines whether a statute is ambiguous by "applying the normal 'tools of statutory construction.'" Blandino-Medina v. Holder, 712 F.3d 1338, 1343 (9th Cir. 2013). In doing so, the Court first engages in a textual analysis of the relevant statutory provision, including a reading of the words of the statute in their context and "'with a view of their place in the overall statutory scheme.'" N. Cal. River Watch v. Wilcox, 633 F.3d 766, 773 (9th Cir. 2011) (quoting Resident Councils of Wash. v. Leavitt, 500 F.3d 1025, 1031 (9th Cir. 2007)). "If the proper interpretation is not clear from the textual analysis, the legislative history offers valuable guidance and insight into Congressional intent." Id.

///

///

7 - OPINION AND ORDER

1.  **Textual Analysis**

Whether the statute is clear as to the precise question at issue turns on whether the "when . . . released" language clearly commands ICE to take an alien into custody immediately upon release from criminal custody. As relevant here, however, "when" has two different usages that suggest different answers to this question. Without a doubt, as Petitioner suggests, "when" can be used to mean "at or during the time that" or "just after the moment that" the triggering event takes place. <u>Webster's Third New International Dictionary Unabridged</u> 2602 (1981). Such a definition clearly implicates a temporal limitation on ICE's authority to take custody of an alien under Section 1226(c)(1).

On the other hand, "when" can mean "in the event that" or "on condition that;" a usage that does not bear the strictly temporal implication of the first usage discussed above. <u>Id.</u> If Congress intended the second usage of "when," ICE's power to subject an alien to mandatory detention may not be limited to where it takes the alien into custody at the jailhouse door.[3]

---

[3] An example illustrates this point. If, at the conclusion of a hearing, a judge said, "The Court shall issue its opinion when the parties' supplemental briefing is completed," few would interpret the judge's statement to mean the Court must issue its opinion at the moment the briefing is completed and could not do so at any time thereafter. While there are certainly differences between this example and the statutory phrase at issue, the example demonstrates that the operative combination of "when" and a passive past participle does not necessarily bear as rigid a meaning as Petitioner suggests.

8 - OPINION AND ORDER

In addition, both usages produce plausible readings of the statute when read in the context of the provision as a whole. Applying the temporal usage of "when," Section 1226(c)(1) mandates that ICE detain any alien deportable by reason of having committed a qualifying offense as long as ICE takes the alien into custody at the moment the alien is released from criminal custody. Applying the conditional usage of "when," however, the provision instructs ICE to take custody of and detain aliens who have committed qualifying offenses, but only "in the event that" they are released from criminal custody. Thus, applying the conditional usage of "when," Section 1226(c)(1) requires ICE to take custody of and detain qualifying aliens, but only if and after the alien is released from criminal custody.[4] So understood, the "when . . . released" language is effectively a mandate to ICE not to interfere with criminal custodial sentences. Thus, after performing the textual analysis, I conclude both readings of "when . . . released" are plausible and the statute remains ambiguous as to the precise question at issue.

### 2. Legislative History and Statutory Purpose

Because ambiguity remains after the textual analysis, I turn to the legislative history and purpose of the statute to discern

---

[4] Notably, the qualifying offenses in Section 1226(c)(1) include some very serious offenses for which some aliens may never be released from criminal custody. See, e.g., 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that aliens who commit aggravated felonies are deportable).

whether the statute is ambiguous. N. Cal. River Watch, 633 F.3d at 773. With regard to Section 1226(c), the Supreme Court noted "Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." Demore v. Kim, 538 U.S. 510, 518 (2003). The Court noted that at the time of passage, Congress was considering evidence of the significant number of crimes committed by criminal aliens, and further considered evidence that "more than 20% of deportable criminal aliens failed to appear for their removal hearings." Id. at 519 (citing S. Rep. No. 104-48, p. 2 (1995)). In addition, the Court found Congress considered studies that "suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this county," and "[i]t was following these Reports that Congress enacted 8 U.S.C. § 1226, requiring the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability." Id. at 521. In finding mandatory detention under Section 1226(c) consistent with due process, the Court concluded that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

10 - OPINION AND ORDER

Although I find Section 1226(c)(1) remains ambiguous, the statutory purpose and legislative history lend additional credence to the viability of the conditional, rather than temporal, interpretation of "when . . . released." As the Court thoroughly discussed in Kim, in light of a high percentage of criminal aliens failing to appear for their removal proceedings when released on bond, Congress sought to facilitate the speedy and efficient deportation of criminal aliens by subjecting a specific class of such aliens to mandatory detention. Kim, 538 U.S. at 518-20. A reading of "when . . . released" that places a very strict temporal limitation on ICE's authority to take criminal deportable aliens into mandatory custody is incongruent with Congress's clear purpose in passing Section 1226(c). See Hosh, 680 F.3d at 381. Simply put, giving otherwise qualifying criminal aliens the opportunity to be released on bond simply because of a delay in taking the alien into ICE custody frustrates the Congressional purpose in passing Section 1226(c).

Although I recognize that Petitioner's reading of "when . . . released" is plausible on the face of the statute, considering the text, context, legislative history, and statutory purpose, I conclude that Petitioner's interpretation is not the clear intent of Congress. Thus, I find the statute is ambiguous and move on to Step Two of the Chevron analysis.

///

11 - OPINION AND ORDER

## B.  Step Two

At Step Two, if the Court finds the relevant statutory provision ambiguous after undergoing the above analysis, the administrative interpretation is entitled to deference so long as it is a reasonable construction of the statute. Chevron, 467 U.S. at 843. "This test is satisfied if the agency's interpretation 'reflects a plausible construction of the statute's plain language and does not otherwise conflict with Congress' expressed intent.'" Oregon Trollers Ass'n v. Gutierrez, 452 F.3d 1104, 1116 (9th Cir. 2006) (quoting Rust v. Sullivan, 500 U.S. 173, 183 (1991)). An agency's decision will not be overturned at the second step "unless it is arbitrary, capricious, or manifestly contrary to the statute." Ramos-Lopez v. Holder, 563 F.3d 855, 859 (9th Cir. 2009).

As discussed above, I find the BIA's conclusion that Section 1226(c)(1) does not restrict when ICE may take a qualifying criminal alien into custody and subject the alien to mandatory detention is a plausible reading of the text of the statute. Moreover, the BIA's interpretation is consistent with Congress's intent in passing Section 1226(c) insofar as it provides for the mandatory detention of the qualifying criminal aliens Congress was concerned would not appear for removal proceedings if released on

12 - OPINION AND ORDER

bond. Therefore, I conclude that the BIA's interpretation of Section 1226(c) is reasonable and entitled to deference.[5]

## II. Authority for Mandatory Detention

In the alternative, even assuming Section 1226(c) requires ICE to take a qualifying criminal alien into custody immediately upon release from criminal custody, I conclude that ICE's failure to do so does not deprive it of the power to subject an otherwise qualifying criminal alien to mandatory detention. "[A] statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." Barnhart v. Peabody Coal Co., 537 U.S. 149, 161 (2003). Accordingly, "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." United States v. James Daniel Good Real Prop., 510 U.S. 43, 63 (1993).

I find the rationale of the Third and Fourth Circuits in Sylvain and Hosh persuasive in concluding that even if Section

---

[5] Because I conclude that the BIA's interpretation of Section 1226(c) is reasonable, I reject Petitioner's argument that the rule of lenity justifies granting the writ. "The rule of lenity . . . does not prevent an agency from resolving statutory ambiguity through a valid regulation." Pacheco-Camacho v. Hood, 272 F.3d 1266, 1271 (9th Cir. 2001). Because the BIA's decision is entitled to Chevron deference, I conclude "[t]o the extent that there is any ambiguity in" Section 1226(c), the BIA "has resolved it through a reasonable interpretation, and the rule of lenity does not apply." Id. at 1272.

13 - OPINION AND ORDER

1226(c) provides a time limit for taking a qualifying alien into custody, the expiry of that time does not deprive ICE of the authority to subject the alien to mandatory detention. See Sylvain, 714 F.3d at 157-61; Hosh, 680 F.3d at 381-83. As the Hosh and Sylvain courts noted, in United States v. Montalvo-Murillo, 495 U.S. 711 (1990), the Supreme Court refused to strip the government of the authority to detain a criminal defendant pending trial when a judge *sua sponte* continued the detention hearing in violation of the Bail Reform Act. 495 U.S. at 714-18. There, the Bail Reform Act provided that before a defendant could be detained, a judicial officer "shall" hold a bond hearing "immediately upon the person's first appearance before the judicial officer". Id. at 714 (quoting 18 U.S.C. § 3142(f)). The Montalvo-Murillo Court reasoned, "[a]ssessing the situation in realistic and practical terms, it is inevitable that, despite the most diligent efforts of the Government and the courts, some errors in the application of the time requirements of § 3142(f) will occur. . . . In these situations, there is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs." Id. at 720.

The Court's rationale in Montalvo-Murillo applies to the present situation. As discussed above and at length by the Court

14 - OPINION AND ORDER

in Kim, in passing Section 1226(c), Congress sought to protect the public from a certain class of criminal aliens who failed to appear for their removal proceedings at a high rate by mandating that ICE take such aliens into custody to facilitate their speedy and efficient removal. Kim, 538 U.S. at 518-20. As in Montalvo-Murillo, the criminal alien should not receive the windfall of the opportunity for release on bond, and the public should not bear the penalty of the possibility of the alien's release pending removal proceedings, simply because ICE did not timely take the alien into custody. See Sylvain, 714 F.3d at 159; Hosh, 680 F.3d at 382-83. Thus, I conclude even if Section 1226(c) requires ICE to take a qualifying criminal alien into custody at the moment the alien is released from criminal custody, failure to do so does not deprive ICE of the authority to subject the alien to mandatory detention.

## CONCLUSION

Based on the foregoing, Petitioner's petition for writ of habeas corpus (#1) is denied, and this proceeding dismissed with prejudice.

IT IS SO ORDERED.

DATED this 29th day of January, 2014.

Anna J. Brown
United States District Judge

15 - OPINION AND ORDER